UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

MARK HAMMING and MARGARET
HAMMING,

          Debtors.

_____/

Case No. DG 21-01475
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

Chapter 13 debtors Mark and Margaret Hamming (the "Hammings" or "Debtors") and Avail Holding, LLC ("Avail") disagree about whether Avail holds a non-recourse second mortgage on the Hammings' principal residence, and that dispute has spilled into, and is complicating, the confirmation of the Hammings' chapter 13 plan. The question is how the plan should treat Avail's claim while the court and the parties endeavor to determine whether Avail has a secured claim, a reduced claim, or no claim at all. The court held an adjourned confirmation hearing on January 20, 2022, in Grand Rapids, after giving the Hammings an opportunity to draft a plan amendment (their fourth) to address the conundrum. After oral argument the court took the confirmation issues under advisement.

Roughly three months after filing their original (proposed) chapter 13 plan (ECF No. 7), the Hammings filed a protective claim on Avail's behalf in the amount of $1.00 describing the claim as "secured" but pursuant to an "invalid assignment," with no basis for perfection.[1] That

---

[1] *See* Claims Register at Claim No. 8 (Debtors' protective proof of claim).

same day, they filed suit against Avail (and related entities) in this court for damages and, more important to today's opinion, to declare either that Avail is not the holder of the second mortgage or, if it does hold the mortgage, that it should be estopped from enforcing it at all, or at least to some extent. *See Hamming v. Asset Management Holdings, LLC, et al. (In re Hamming)*, Adv. No. 21-80082 (Bankr. W.D. Mich.) (the "Adversary Proceeding").

In response to the Hammings' protective proof of claim, Avail filed a proof of claim, amending the amount due from $1.00 to $81,825.38, and asserting a valid lien on the Hammings' residence pursuant to a recorded mortgage and various assignment documents, presumably to supersede the Hammings' protective proof of claim. *See* Fed. R. Bankr. P. 3004.[2] In response to the Adversary Proceeding, Avail and its co-defendants filed two motions to dismiss, the latter of which is set for argument in late February. Although the Hammings have not filed a formal "claim objection," there is no other way to view their complaint except as one. Indeed, the adversary proceeding approach is consistent with Rule 3007(b) given the Hammings' challenge to the nature and extent of Avail's lien.

Amidst the dust of litigation resulting from these procedural maneuverings, the Hammings ask the court to confirm their chapter 13 plan as amended, even though the nature or status of Avail's claim is far from certain. With the Adversary Proceeding pending, Avail's claim defies easy classification for purposes of applying the statutory confirmation standards: on the one hand, the land records reflect Avail as the holder of a second mortgage on the residence; on the other, Avail's proof of claim, which was deemed allowed when filed under 11 U.S.C. § 502(a), has since drawn an objection in the form of the Adversary Proceeding, casting doubt on its right to payment. Under the circumstances, the Hammings (with the acquiescence of the chapter 13 trustee) have

---

[2] No one has challenged Avail's filing of the amended claim. *See* Fed. R. Bankr. P. 3004, Committee Notes on Rules—2005 Amendment.

elected not to treat Avail as the holder of an "allowed secured claim" and, rather than escrow payments, to put all payments to that entity (and only that entity) on hold pending resolution of the Adversary Proceeding (and presumably any appeals thereafter).

Although their original plan proposed a payment escrow, and although the court adjourned the prior confirmation hearing to give the Hammings an opportunity to "draft around" the uncertainty of Avail's claim under the circumstances, the Hammings' Fourth Amendment now proposes the following, unsatisfactory, treatment of Avail's supposed claim:

> 1. During the pendency of the Adversary Proceeding, the Trustee shall make payments on administrative claims and to creditors other than those involved in the Adversary Proceeding.
>
> 2. The Debtors will file an amendment to their confirmed plan within 21 days of the Court's determination of the amount and extent of the Defendants' claim in the Adversary Proceeding. That amendment shall provide to pay the Defendants' allowed claim, if any, in the amount determined by the Court and through the Debtors' plan.
>
> 3. The Debtors delete Paragraph IV. R. 4. of their original plan. Doc. No. 7, p. 11.

*See* Fourth Amendment to Chapter 13 Plan - Pre-Confirmation (ECF No. 51, the "Fourth Amendment") at p. 1.  The court, like Avail, regards the Fourth Amendment as "unsatisfactory" for several reasons.

First, the Fourth Amendment makes it impossible for the court to give Avail its due under § 1325(a)(5),[3] assuming the court later determines through the Adversary Proceeding that Avail is the holder of an "allowed secured claim."  For example, the Fourth Amendment, which Avail does not accept, cannot be read as permitting Avail to retain a lien on the residence, so it is at least arguable that the binding effect of confirmation would jeopardize Avail's asserted property

---

[3] The Sixth Circuit reads § 1325(a) not simply as discretionary, but as imposing independent confirmation requirements in all chapter 13 cases.  *Shaw v. Aurgroup Financial Credit Union*, 552 F.3d 447, 455 (6th Cir. 2009) ("…we have consistently treated the provisions in § 1325(a) as mandatory requirements for confirmation").

interest.  11 U.S.C. § 1327(a).  Indeed, in the second paragraph of the Fourth Amendment, the Hammings refer to payment of the Defendants' "allowed claim, if any," omitting the possibility that the claim may be an "allowed *secured* claim" within the meaning of § 1325(a)(5).  Given the discharge in the Hammings' prior chapter 7 case, Avail may only enforce its claim *in rem*,[4] so the distinction between secured and unsecured (and the resulting risk to Avail) is very significant even though the plan proposes to pay *unsecured* creditors in full.

Second, the Fourth Amendment contemplates no payment to Avail during the pendency of the Adversary Proceeding, although § 1325(a)(5) entitles holders of allowed secured claims to receive "the value, as of the effective date of the plan, of property . . . not less than the allowed amount of such claim."  11 U.S.C. § 1325(a)(5)(B)(ii).  If the court later determines that Avail holds an allowed secured claim, it is not at all clear that the Hemmings are proposing appropriate treatment or, even if they are, that they would be able to make the required payments.

In other words, that the Fourth Amendment commits the Hammings to file a plan amendment at the conclusion of the Adversary Proceeding only serves to raise a feasibility issue under § 1325(a)(6), as Avail's counsel noted in her amended objection and during the confirmation hearing.  Putting aside the fact that the passage of time itself (and resulting uncertainty) creates risk for lenders generally, the likelihood that the Hammings can afford to make an unspecified payment at an unspecified time is an issue that, as plan proponents, they have the burden of establishing.  Moreover, the Debtors did not discuss adequate protection during the adjourned hearing.

---

[4] *See* 11 U.S.C. § 524(a); *Johnson v. Home State Bank*, 501 U.S. 78 (1991) ("a bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor i*n personam* -- while leaving intact another -- namely, an action against the debtor *in rem*").

On the question of feasibility, during the confirmation hearing on January 20, 2022, the trustee's counsel suggested -- without contradiction from the Hammings' counsel -- that with an increase in plan payments they might be able to pay roughly $42,000.00 on Avail's claim if the Hammings prevail in the Adversary Proceeding to some extent.  Yet, as Avail notes in its papers, it has filed a claim in the amount of nearly twice that ($81,825.38), and has filed an addendum to the proof of claim reporting post-petition legal fees in the amount of $4,455.00 as of January 13, 2022 -- an amount that is certain to grow as the Adversary Proceeding ensues.  The Hammings have made no effort to persuade the court that the plan is feasible today, considering that Avail may prevail in the Adversary Proceeding, leaving the Hammings with the obligation to fund a nonrecourse debt well in excess of the $42,000.00 that the trustee's counsel suggested they might be able to afford.

In most chapter 13 confirmation hearings, the issue of feasibility requires the court to predict whether the debtor can make the payments as proposed.  Here, the question of feasibility depends largely on the Debtors' likelihood of success in litigation, necessarily inviting the court to make a forecast or prediction about the outcome of the Adversary Proceeding, not just future payments.  Although the court is loath to prejudge the Adversary Proceeding, the nature of the Debtors' plan requires at least a prediction.  It is fair to say that to succeed in their plan, the Hammings must overcome many hurdles, such as the substantial legal authority Avail cites on the validity of its assignment, the affidavits of its principals, and the fact that the prior note holder has not asserted any interest in the note since the Debtors' last bankruptcy.  These hurdles tend to cast doubt on the Hammings' likelihood of success in the Adversary Proceeding, and therefore create substantial doubt about whether their plan is feasible.

Contrary to the court's suggestion that the Hammings consider drafting around the problems with Avail's claim in order to preserve the *status quo* while the Adversary Proceeding wends its way to judgment, the Hammings proposed a plan that departs from the *status quo,* by presuming that Avail has no claim (contrary to the land records), and by promising to file future amendments  only if they have guessed wrong and must pay Avail, all while the trustee calculates that they can only afford to pay (at most) a claim in half the amount that Avail asserts.  No matter that the pendency of a claim objection deprives a filed claim of its status as being "deemed allowed," the question of whether Avail has a secured claim is for the court, not the Debtors.  The plan stands the *status quo* on its head, by predetermining that the debt is not secured and usurping the judicial function.  Because it is certainly plausible that Avail has a claim in the amount reflected in its proof of claim, that the court may uphold the assignment, and that the Hammings will not have the wherewithal to successfully complete a plan that may have to include Avail to some extent, the court cannot regard the Hamming's plan as feasible.

As requested during the January 20 hearing, the court will give the Hammings a limited opportunity to amend the plan further, and file a motion to get the plan back on the court's confirmation calendar.  If they fail to do so within the time allotted, the court will dismiss the case without further notice, given the substantial passage of time since the order for relief.  If the court dismisses the chapter 13 proceeding, it will also dismiss the Adversary Proceeding for want of jurisdiction, leaving the parties to another forum if necessary.

Finally, recognizing that it is impossible and imprudent to weigh in on an unfiled plan, the court nevertheless predicts that it would carefully consider a plan that unequivocally preserves the *status quo* pending final judgment in the Adversary Proceeding, provides for the retention of

Avail's lien (if any), and adequately protects Avail's supposed interest in the residence, either through escrowed payments or perhaps (with sufficient proofs) an equity cushion.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. Confirmation of the plan as proposed through the Fourth Amendment is DENIED;

2. On or before February 16, 2022, the Debtors shall file and serve on all creditors a restated and amended plan together with a short motion to confirm the restated and amended plan; and

3. If the Debtors fail to timely file an amended and restated plan and motion as provided in the preceding paragraph, the court may enter an order dismissing the case and the Adversary Proceeding without further notice.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Roger G. Cotner, Esq., and Elizabeth M. Abood-Carroll, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated January 24, 2022**



Scott W. Dales
United States Bankruptcy Judge