UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

MARK HAMMING and MARGARET
HAMMING,

Case No. 21-01475-swd
Hon. Scott W. Dales
Chapter 13

                    Debtors.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

In his First Application for Allowance and Payment of Debtors' Attorneys' [sic] Fees and Expenses,[1] chapter 13 debtor's counsel Roger G. Cotner, Esq., asks the court to allow his administrative claim of $24,908.15 in fees and expenses in addition to the $1,400.00 the Debtors already paid him and the $3,500.00 he received as his "no look" fee upon confirmation.

Initially, no one objected to the Application, but given the court's independent obligation to review fee petitions[2] and its familiarity with the case, the court conducted its own review and was troubled by what it found. In addition, after Mr. Cotner filed the Application, the Sixth Circuit issued its opinion in *In re Village Apothecary, Inc.*, 45 F.4th 940 (6th Cir. 2022), recognizing that bankruptcy courts may consider "results obtained" after employing the "lodestar" approach to determining whether fees are reasonable under 11 U.S.C. § 330(a).[3] The decision resonated here because the bulk of the fees at issue in the Application related to an adversary proceeding through

---

[1] (ECF No. 83, the "Application"). Citations to "ECF No. ___" refer to entries on the docket in this proceeding or the related adversary proceeding, as indicated.

[2] *Cupps & Garrison v. Rhiel (In re Two Gales, Inc.)*, 454 B.R. 427, 433 (B.A.P. 6th Cir. 2011) ("Even if no objection has been raised by creditors or parties in interest, the bankruptcy court has both the power and the obligation to review fee applications.").

[3] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*. Specific sections of the Bankruptcy Code are identified herein as "§ ___."

which the only "results obtained" involved generating fees for Mr. Cotner and opposing counsel. On the other hand, the statute warns against Monday-morning-quarterbacking by directing the court to consider whether the representation was "beneficial *at the time at which the service was rendered . . . .*" 11 U.S.C. § 330(a)(3) (emphasis added).

Under the circumstances, the court set the Application for hearing and extended the objection deadline to encourage "a more robust and multilateral evaluation"[4] of counsel's fees.

In response, the United States Trustee ("UST"), who serves as the "bankruptcy watch dog,"[5] and the chapter 13 trustee, Brett N. Rodgers ("Trustee"), who vigilantly advocates for the estate (and derivatively, creditors), formally endorsed the Application, each indicating that Mr. Cotner has already discounted his fees substantially. They state that after careful review they do not regard the fees as excessive. Mark Hamming also filed a declaration supporting the Application and expressing gratitude to Mr. Cotner for the discount, and also for giving him and his wife the chance to challenge the claim of Avail Holding, LLC ("Avail").[6]

Unlike the UST, the Trustee, and the Debtors, however, Avail took advantage of the extended objection period and filed a full-throated objection to the Application.[7]

After reviewing the Application and the Objection, the court shares many of the concerns Avail has expressed. As is clear from the Memorandum of Decision and Order dated March 3, 2022, and entered in Adv. Pro. No. 21-80082 (ECF No. 31, the "MDO"), the court also held a low opinion of the claims the Debtors asserted against Avail in the adversary proceeding. Indeed, after

---

[4] *See* Scheduling Order (ECF No. 89).

[5] *See In re Connolly N. Am., LLC*, 802 F.3d 810, 817 (6th Cir. 2015) (quoting H.R.Rep. No. 95–595 at 88 (1978), 1978 U.S.C.C.A.N. 5963, 6049 (reprinted in 1978 U.S.C.C.A.N. at 5787, 5963, 6049) for the proposition that the primary role of the U.S. trustees is to serve as the "bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena").

[6] Avail holds a non-recourse second mortgage claim against the Debtors' principal residence that it had not enforced for over ten years.

[7] *See* Creditor Avail Holding, LLC's Objectons [sic] to First Application for Allowance and Payment of Debtors' Attorney's Fees and Expenses (ECF No. 92, the "Objection").

the court rejected the Debtors' unsupported suspicions that Avail was not the holder of the note and second mortgage, the rest of their complaint fell "like a house of cards," suggesting the flimsy nature of the case and calling into question whether Mr. Cotner should have filed it in the first place.[8] Echoing these concerns, the thrust of the Objection is that the adversary proceeding had no merit from the start, and that it accomplished nothing.  Avail similarly took aim at the charges for drafting the numerous iterations of the Debtors' chapter 13 plan, reflected throughout the itemization within the Application.

Avail also complained, cogently, that allowing the Application "will cause a delay in disbursements to Avail for the pre-petition arrears and the Post-Petition Fee Notices."[9]   In response, at the hearing on the Application, Mr. Cotner suggested that the Debtors' chapter 13 plan, which if successful will fully pay all creditors (including Avail), limits Avail to receipt of only the ongoing monthly payments, but nothing on account of the prepetition arrears or post-petition fees (contemplated in Fed. R. Bankr. P. 3002.1) until the final payment.  Avail and the Trustee do not share Mr. Cotner's view of the plan, and today's opinion does not aim to resolve that simmering dispute.

Despite the seeming rigidity of the lodestar analysis, reviewing fees is more of an art than a science, as the recent acknowledgement within *Village Apothecary* and the factors enumerated in § 330(a)(3) suggest.  In general, even recognizing the import of § 329, the court hesitates to disturb the arrangements between debtors' attorneys and their clients, at least where the client is not complaining and will bear the burden of paying the attorney.[10]  Here, the Debtors are not

---

[8] *See* MDO at p.11.
[9] *See* Objection at ¶ 13.
[10] *Cf. In re Stover*, 439 B.R. 683, 688 (Bankr. W.D. Mich. 2010) ("When the economic impact of staffing decisions is not visited upon a debtor's creditors or estate, the debtor and counsel should have a free hand in arranging their affairs.").

complaining—indeed Mr. Hamming ratified the Application in a sworn statement—and the statutory watch-dog and his appointed trustee, both of whom invariably keep the creditors' interests close, similarly support the Application.  It also bears repeating that the Debtors' plan requires full payment to unsecured creditors, so the approval of the Application will affect the timing of their payment, probably not the ultimate payment itself.  Although the court has independent duties in the fee approval process, it does not operate in a vacuum, and must consider the judgments of Mr. Cotner, the Debtors, their creditors, the UST, and the Trustee.

The only meaningful harm that Avail will suffer if the court approves the Application is the likely delay in receiving payment on its prepetition arrears and post-petition fees and expenses (assuming the plan provides for such payments).  At the very least, the plan provides for full payment of Avail's second mortgage claim either through sale or refinancing by August 2024, and failing that, Avail will have prompt access to its collateral, under an order approving Avail's plan-related stipulations.  In short, approving the Application may slightly increase Avail's risks from this proceeding.

Following the hearing on the Application held on September 20, 2022, in Grand Rapids, the court struggled with the conundrum resulting from its profound doubts about the reasonableness of the fees requested in the Application and its usual deference to the parties-in-interest.  Recognizing that Avail's principal motivation in filing the Objection is to protect the timing of its payment, the court instinctively considered two possible statutory solutions, rejecting the first but settling on the second.

First, the court considered equitable subordination under § 510—a doctrine concerned with the timing of distributions and inequitable conduct.  After consulting the case law, however, the court discarded that approach.  *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 744 (6th Cir. 2001)

(citing *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 717–18 (6th Cir.1992)).  Although the court does not regard Mr. Cotner's pursuit of the adversary proceeding with favor, his pursuit of the case does not qualify as "gross misconduct tantamount to fraud, overreaching or spoliation . . . ."  *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d at 717–18.  Perhaps, given the fiduciary nature of the attorney-client relationship, the court could justify treating Mr. Cotner as a non-statutory insider warranting greater scrutiny, *id.*, but even so the doctrine of equitable subordination does not quite seem to fit here.

The second statutory basis involving the timing of distributions, specifically distributions of claims of professionals, is implicit in most fee awards which are generally interim, not final.  *In re Specker Motor Sales Co.*, 289 B.R. 870 (Bankr. W.D. Mich.), *aff'd sub nom. Specker Motor Sales Co. v. Eisen*, 300 B.R. 687 (W.D. Mich. 2003), *aff'd*, 393 F.3d 659 (6th Cir. 2004); 11 U.S.C. § 331. Recognizing the hardship that estate professionals (and debtors' attorneys) sometimes suffered under the Bankruptcy Act by having to wait for payment until the end of a case, Congress included within the Bankruptcy Code protections to mitigate this difficulty, in this way encouraging competent counsel to participate in bankruptcy cases.  Specifically, § 331 provides as follows:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, *the court may allow and disburse to such applicant such compensation or reimbursement.*

11 U.S.C. § 331 (emphasis added).  The last, and italicized, phrase of § 331 authorizes the court to do two things: (1) allow compensation and reimbursement of expenses; and (2) permit immediate disbursement on that allowed claim.  The first blesses the claim; the second permits it to be paid before the end of the case.  Moreover, the use of the word "may" signals that the court

has discretion. *Id.* The second aspect of § 331's relief is, in effect, a timing device which, given the unusual circumstances surrounding the Application, the court will press into service in this case.

Despite misgivings about the Application, but giving due deference to the UST and Trustee (who endorse it) and the Debtors (who must pay for it), the court will approve the Application in the amount of $23,000.00, which reflects the original discount described in the Application and the additional discount reported in the UST's response.[11] The court, however, will postpone the payment of Mr. Cotner's interim fees but only to the extent that payment would delay any payment to Avail on account of its ongoing mortgage payment claim, claim for cure of the prepetition arrearage, and claims for post-petition fees and expenses under Fed. R. Bankr. P. 3002.1.

Recognizing that there may be a dispute about Avail's payment rights under the confirmed plan, the court will direct the Trustee to take the lead in settling an order that reflects the subordination and disbursement described in today's opinion, and perhaps resolves the incipient dispute about Avail's treatment under the confirmed plan.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Application is APPROVED in the amount of $23,000.00, and Avail's Objection is OVERRULED except as provided herein.

IT IS FURTHER ORDERED that the counsel for the Trustee, in consultation with counsel for the UST, the Debtors, and Avail, shall promptly submit a separate order authorizing payment of Mr. Cotner's administrative claim under § 331, consistent with the subordination reflected in this Memorandum of Decision and Order.

---

[11] (ECF No. 93).

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon all entities included on the mailing matrix in this case, Roger G. Cotner, Esq., Elizabeth Clark, Esq., Elizabeth Katherine Lamphier, Esq., and Elizabeth Abood-Carroll, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 3, 2022**



Scott W. Dales
United States Bankruptcy Judge