UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

MARK HAMMING and MARGARET
HAMMING,

                    Debtors.

_____/

Case No. 21-01475-swd
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                    Chief United States Bankruptcy Judge

Chapter 13 debtors Mark and Margaret Hamming (the "Debtors") proposed to amend their confirmed chapter 13 plan to provide for a loan modification agreement that they and the holder of a secured claim against their residence, Avail Holding, LLC ("Avail"), reached after the Debtors defaulted in meeting their obligations to Avail under their plan.  Chapter 13 trustee Brett N. Rodgers (the "Trustee") objected to the Debtors' First Post-Confirmation Plan Amendment (ECF No. 120, the "Post-Confirmation Amendment"), essentially on the grounds that the Post-Confirmation Amendment proposes to change the plan by moving from a "trustee pay" to "direct pay" arrangement, contrary to 11 U.S.C. § 1326(c), the court's decision in *In re Vela*, 526 B.R. 230 (Bankr. W.D. Mich. 2015), and authorities cited therein.

The court heard arguments to consider the Post-Confirmation Amendment and the Trustee's Objection to Debtors' First Post-Confirmation Plan Amendment (ECF No. 127, the "Objection") on November 5, 2024, in Grand Rapids, Michigan.  For the following reasons, the court will overrule the Objection and approve the Post-Confirmation Amendment.

The Debtors' original plan (as amended before confirmation) required the Trustee to make payments to Avail in the amount of $550.32 per month, "until the earlier of the Debtors' refinancing

or sale of their personal residence or August 28, 2024, at which time the Debtors will pay the balance then due to Avail, together with interest at the contract rate of 8.0%." *See* Corrected Seventh Amendment to Chapter 13 Plan – Pre-Confirmation (ECF No. 75, the "Seventh Pre-Confirmation Amendment").

At the hearing, Debtors' counsel explained that his clients were unable to pay Avail in full as contemplated in the Seventh Pre-Confirmation Amendment, and that the automatic stay lifted (as previously agreed at confirmation) to permit Avail to exercise its rights under the loan documents and non-bankruptcy law.[1]  Counsel further explained, however, that the Debtors did pay Avail most of the debt -- $70,000.00 from a post-petition inheritance – and agreed to enter into a loan modification agreement to pay the remaining balance -- $11,566.86 – directly at the rate of $558.28 per month starting November 1, 2024, and continuing through September 1, 2026. *See* Post-Confirmation Amendment at ¶ 3.  The Post-Confirmation Amendment proposes to continue paying the Trustee $901.00 every two weeks to fund the 100% distribution as originally promised in the plan, albeit somewhere sooner than anticipated.

In his Objection, the Trustee does not contend that unsecured creditors will be worse off if the court approves the amendment.  Instead, he argues that the need for the Trustee to monitor the Debtors' payments to Avail persists as it did at confirmation, and that, under *Vela*, *supra*, and 11 U.S.C. §§ 1326(c) and 1329, the Debtors cannot amend a confirmed plan to change from "trustee pay" to "direct pay."  Indeed, § 1326(c) specifically states that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1326(c); *Vela*, 526 B.R. at 236 (quoting § 1326(c)).

---

[1] *See* Order Resolving Objections to Confirmation and Modifying the Automatic Stay dated June 28, 2022 (ECF No. 80).

The Debtors do not quarrel with *Vela*, but instead distinguish it. Here, they say, their confirmed plan specifically stated that the Trustee would only make payments to Avail "until the earlier of the Debtors' refinancing or sale of their personal residence or August 28, 2024." *See* Seventh Pre-Confirmation Amendment at ¶ 3. That date passed without a sale or refinancing, ending the Trustee's obligation if not authority to pay Avail. Moreover, they argue that the Post-Confirmation Amendment continues their bi-weekly payments to the Trustee who, if the court approves the proposal, will continue to make payments to unsecured creditors to fund the 100% dividend. The Debtors conclude, therefore, that the Post-Confirmation Amendment is not inconsistent with their original plan as it pertains to the Trustee's authority to pay Avail, and therefore does not run afoul of § 1326(c) or *Vela*. The court agrees.

Although the Debtors refer to a "loan modification agreement" in the Post-Confirmation Amendment, their proposed agreement with Avail effectively refinances their obligation, albeit with Avail itself. The original plan contemplated an unspecified refinancing and excused the Trustee from paying Avail after August 28, 2024; the Post-Confirmation Amendment does both. Moreover, the Post-Confirmation Amendment comes within the terms of § 1329 by increasing the amount of payments to Avail and extending the time for making the payments, largely to address the fact that Avail received payment on its claim from the inheritance, not under the plan. 11 U.S.C. § 1329(a)(1-3).

The Trustee interprets the confirmed plan (and the Seventh Pre-Confirmation Amendment) as implying that, if the Debtors refinanced the Avail debt, the Trustee would continue making the payment on the refinanced obligation, presumably relying on the presumption the court recognized in *Vela* and § 1326(c). The court does not share that view. If the Debtors had refinanced the Avail obligation with a different entity, the resulting obligation would have been a new, post-petition

obligation. The court doubts that the presumption under § 1326(c) that applies at confirmation also applies to post-confirmation obligations. Moreover, fairly read, the Seventh Pre-Confirmation Amendment removes the Trustee's authority to pay Avail after August 28, 2024, without qualification.[2] The current plan as confirmed, unlike the plan in *Vela*, expressly ended the Trustee's authority to pay Avail, and the fact that the Debtors refinanced their debt to Avail *with Avail* does not change that. *Vela*, therefore, is distinguishable and the Post-Confirmation Amendment does not offend § 1326(c).

Finally, the Trustee is probably right that the Debtors would benefit from his continued involvement in paying Avail. Indeed, they defaulted under their plan as recently as August 28, 2024. Nevertheless, their proposed amendment permits them to avoid paying the Trustee's administrative fee on the post-amendment payments to Avail, which they obviously regard as a modest benefit, and it comports with § 1329. The benefit of keeping a trustee involved in making payments on a home mortgage in default supports the presumption under § 1326(c), but that presumption no longer holds sway in the present case because (effective August 28, 2024) the confirmed plan, and specifically the Seventh Pre-Confirmation Amendment, "otherwise provided." 11 U.S.C. § 1326(c).

For the foregoing reasons, the court will overrule the Objection and approve the Post-Confirmation Amendment.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee's Objection is OVERRULED, and the Post-Confirmation Amendment is APPROVED.

---

[2] Because the court reads the Seventh Pre-Confirmation Amendment as terminating the Trustee's authority to make payments, making the Post-Confirmation Amendment consistent with the original plan, the Trustee's citation to *Ford Motor Credit Co. v. Parmenter (in re Parmenter)*, 527 F.3d 606 (6th Cir. 2008), is inapposite.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Roger G. Cotner, Esq., Elizabeth Clark, Esq., and Elizabeth Abood-Carroll, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 6, 2024**



Scott W. Dales
United States Bankruptcy Judge